IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ATG TRUST COMPANY, AN ILLINOIS CORPORATION,<br><br>     Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>JAN R. SCHLICHTMANN and JAN R. SCHLICHTMANN., P.C.,<br><br>     Defendants/Counterclaim Plaintiffs. | Case No. 2:17-cv-00646-CMR |

**PLAINTIFF ATG TRUST COMPANY'S RESPONSE AND MEMORANDUM OF LAW IN SUPPORT OF RESPONSE TO SCHLICHTMANN DEFENDANTS' <u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff ATG Trust Company ("ATG") by and through its undersigned counsel, files this Response and Memorandum of Law in Support of its Response to the March 23, 2018 Motion for Summary Judgment filed by Defendants Jan R. Schlichtmann and Jan R. Schlichtmann, P.C. (collectively, "Schlichtmann").

**General Background**

1.     This legal malpractice suit was initiated on August 16, 2016. ATG's professional negligence claims against Schlichtmann arise from Schlichtmann's representation of ATG in a contempt proceeding brought in this Court in February of 2015 by GlaxoSmithKline ("GSK") against Michael Greer, Greer, Russell, Dent & Leathers, PLLC ("GRDL") and ATG. ATG asserts that the care, skill or knowledge exercised by Schlichtmann in the representation of ATG in the GSK contempt matter fell far below acceptable professional standards in the Commonwealth of Pennsylvania in multiple respects.[1] As a result of Schlichtmann's grossly deficient representation,

---

[1] ATG has served the February 2, 2018 expert report of Abraham C. Reich (Exhibit A) setting out the numerous ways in which Schlichtmann's representation fell below acceptable professional standards in

ATG, based on Schlichtmann's negligent advice and representation paid over $2 million to satisfy a settlement of GSK's contempt motion, a settlement which Schlichtmann encouraged but did not fully inform ATG of many significant facts, circumstances and consequences which should have been disclosed before the settlement agreement was signed.

**The Underlying GSK Contempt Action and ATG's Action Against Greer and GRDL**

2.  This Court is well aware of the overwhelming evidence that Greer and GRDL, ATG's co-respondents in GSK's contempt proceeding, were responsible for misrepresenting that GSK had approved the payment which ATG ultimately reimbursed to GSK with absolutely no payment or contribution from Greer/GRDL. This Court is also painfully aware that ATG was required to present five days of evidence and engage in extensive motion practice, after which this Court signed its June 17, 2016 Memorandum Opinion finding that Greer and GRDL were obligated to fully indemnify ATG for the $1.9 million payment ATG made to GSK on May 1, 2015 to satisfy the requirements of a March 10, 2015 Contempt Settlement Agreement. ATG has undertaken significant efforts to recover as much of its judgment as possible from Greer and GRDL under its indemnity judgment. Those efforts include filing garnishment actions against potential Greer and GRDL accounts in multiple banks in Mississippi and engaging in an "all parties" mediation with Greer, GRDL, Carolina Casualty Insurance Company ("CCIC") (the malpractice insurance carrier for Greer/GRDL) and Schlichtmann and Schlichtmann's malpractice insurance carrier. Exhibit B, Peter Birnbaum January 30, 2018 depo. at p. 143, 144, 161, 162 and 179.

3.  To date, notwithstanding ATG's significant efforts, ATG has been unable to actually recover any money from Greer/GRDL. However, ATG has reached a confidential, but conditional, settlement agreement with Greer/GRDL and CCIC, which, if fully consummated, would allow

---

the Commonwealth of Pennsylvania. A true and accurate copy of the Reich report is attached as Exhibit A to this Response and Memorandum in Support.

ATG to recover an amount slightly less than half of its judgment. As demonstrated in the February 2, 2018 expert report of Abraham C. Reich and as will be shown below, the reasons that ATG is now able to recover less than half of the amount it is owed from Greer/GRDL, three years after paying the Greer/GRDL obligation for their misrepresentation to GSK (and ATG) fall squarely on the shoulders of Schlichtmann.

4. Schlichtmann's Motion for Summary Judgment purports to be based upon three grounds:

- Schlichtmann claims "there is no evidence that Attorney Schlichtmann was negligent in his limited representation of ATG and that ATG has not satisfied the elements of a professional negligence claim;

- Schlichtmann claims that ATG has not sustained an actual loss and its claimed damages are "nominal," speculative and remote even though ATG spent a year and a half and hundreds of thousands of dollars to obtain this Court's judgment against Greer/GRDL for the $1.9 million ATG paid to GSK for Greer's misrepresentation, and even though ATG has not yet recovered a dollar on that judgment;

- Schlichtmann claims that ATG is estopped from making its professional negligence claims against Schlichtmann because the "facts or facts at issue" in the indemnity trial against Greer were identical to the facts or facts at issue in ATG's claims against Schlichtmann and that ATG has changed its position from the indemnity trial to this matter.

As will be clearly shown below and in Exhibit A, the February 2, 2018 expert report of Abraham C. Reich, none of these alleged grounds for summary judgment have merit and there are genuine issues of material fact which preclude a summary judgment on any one of those grounds.

5. The threshold matter for the Court is whether the claims ATG makes against Schlichtmann are identical to or even similar to the negligent misrepresentation indemnity claims ATG successfully made against Greer/GRDL. Schlichtmann either misunderstands or intentionally ignores the fact that the claims ATG made against Greer/GRDL arose on July 26, 2013 when Greer misrepresented that "by Agreement" with GSK's attorneys the so-called "holdback funds" could be distributed. Schlichtmann did not begin to represent ATG until almost two years later in

February of 2015, when ATG entrusted its defense in the contempt claims made by GSK to Schlichtmann. Notwithstanding Schlichtmann's efforts to confuse the issue, ATG does not claim that Schlichtmann is responsible in any way for Greer's misrepresentation which caused ATG to approve the release of $1.9 million to Greer/GRDL and their clients in reasonable reliance upon and in accordance with the specific terms of the QSF Stipulation and Order.

6.     To the contrary, ATG's claims against Schlichtmann arise from Schlichtmann's negligent representation beginning in February of 2015, both during the evidentiary contempt hearing before the Court and in the settlement discussions and agreement which followed, all of which caused ATG to become jointly and severally responsible for the misconduct of Greer/GRDL, even though ATG had a right under the QSF Stipulation and this Court's QSF Order to rely on Greer's representations.  ATG should have never been responsible for the misrepresentation which was made to it. ATG's claims against Greer/GRDL were completely different from the claims made here against Schlictmann in many respects. What Schlichtmann misunderstands or refuses to acknowledge is that competent counsel would never have led ATG into agreeing to joint and several liability for the misconduct of Greer/GRDL and failing that, would have properly documented ATG's right to indemnity from Greer/GRDL as part of any settlement agreement and would have engaged in some due diligence and investigation to be certain that Greer/GRDL had the financial wherewithal to satisfy its obligation to indemnify ATG. As the evidence in this case shows, Schlichtmann was actually aware that Greer claimed he did not have the financial wherewithal to reimburse ATG for the $1.9 million payment ATG made to GSK as a result of Greer's misrepresentations. Unfortunately, Schlichtmann failed to relate that and other critical information to ATG before he signed the contempt settlement agreement obligating ATG for Greer/GRDL's obligation.

**Schlichtmann claims no evidence that Schlichtmann was negligent**

7. The simplest response to Schlichtmann's claims that there is no evidence of Schlichtmann's professional negligence is the February 2, 2018 expert report of Abraham C. Reich setting out the numerous ways in which Schlichtmann's representation fell below acceptable professional standards in the Commonwealth of Pennsylvania. *See*, Exhibit A. Mr. Reich is an esteemed member of the Pennsylvania Bar, a former Chancellor of the Philadelphia Bar Association, the Chair Emeritus of Fox Rothschild LLP, the Founding Member of the Fox Rothschild [2] found the following areas in which Schlichtmann's care, skill and/or knowledge, fell below acceptable professional standards in Pennsylvania:

- Lack of any Written Fee Agreement or Any Fee Agreement
- Failure to Disclose Schlichtmann's Conflicts of Interest
- Failure to seek a continuance of the GSK Contempt Motion
- Failure to File a Response to GSK's Contempt Motion
- Failure to Appear at Hearing in Person
- Failure to Defend Against the GSK Contempt Motion
- Failure to Represent ATG's Interests in Binding Settlement

---

[2] Mr. Reich describes some of his professional responsibility activities as follows:

> For over thirty-seven years, I have been active in the area of legal ethics and the interpretation and application of the Pennsylvania Rules of Professional Conduct (and its predecessor Code of Professional Responsibility). I have been a member of the Philadelphia Bar Association's Professional Responsibility and Professional Guidance Committees. In 1983 and 1984, I served as Chair of the Professional Responsibility Committee. In 1987 and 1988, I served as Chair of the Professional Guidance Committee. I also served as a member of a Hearing Committee for the Disciplinary Board of the Supreme Court of Pennsylvania for six years. For a portion of that time, I chaired the Hearing Committee. I have also served, from approximately 1988 to 1995, as one of two appointed lawyers (non-judicial) liaisons to the Judicial Ethics Committee of the Pennsylvania Conference of State Trial Judges. Exhibit A at p. 2.

- Failure to Adequately Inform ATG of the Applicability of Insurance
- Misrepresenting Factual Issues to ATG

8. In addition to the negligence of Schlichtmann described in the Reich report, there is other evidence of Schlichtmann's failure to fully inform ATG of information, facts and circumstances which were crucial to ATG's defense in the GSK contempt matter and the settlement of that matter. Specifically, there is substantial evidence that during the settlement discussions of the contempt matter, Michael Greer repeatedly advised Schlichtmann that he did not have the financial wherewithal to pay the $1.9 million contempt settlement for which ATG became jointly and severally responsible with Greer on March 10, 2015 when Schlichtmann signed the settlement agreement he had negotiated and drafted on behalf of ATG. Yet, according to the deposition testimony of Robert Lopardo, ATG's President, Lopardo was not aware "that during settlement discussions Mr. Greer had advised Mr. Schlichtmann that because he [Greer] had no money he would go forward and defend GlaxoSmithKline's allegations if necessary." Ex. C, Lopardo October 9, 2015 depo. at p. 111. Similarly, Lopardo learned that "Greer offered to provide a note to ATG in lieu of a cash payment towards a settlement with ATG" *only after* the settlement had been entered into and not before. *Id.* These are critical facts for ATG to have known at the time it agreed to the contempt settlement agreement with Schlichtmann's encouragement and insistence.

9. The evidence shows that ATG was advised and strongly encouraged by Schlichtmann to agree to a settlement which made ATG jointly and severally responsible for an obligation to GSK for which Greer and GRDL were solely responsible. While Schlichtmann claims that he kept ATG and its then President, Robert Lopardo fully informed regarding the settlement he negotiated with

GSK and Greer, his own testimony proves that claim to be false.[3] Among the many deficiencies in Schlichtmann's legal representation of ATG, according to his own testimony, on March 5, 2015, he entered into a settlement agreement which bound ATG to be jointly and severally responsible to GSK for the full $1.9 million at issue plus solely responsible for demanded by GSK $125,000 in legal fees. On March 6, 2015, the following day, there is evidence in the form of an email from Lopardo to Schlichtmann in which Lopardo asks whether Schlichtmann had obtained an extension of GSK's deadline to settle, clearly demonstrating that Lopardo and ATG were not informed that Schlichtmann had reached a settlement. (Ex. D, January 25, 2018 Schlichtmann depo. at pp. 28, 78-79, 157-59, 218-19). Yet, Schlichtmann forwarded a proposed Settlement Agreement to Lopardo on March 10, 2015, four days later.

**Objection to Report and Opinions of James B. Peloquin and Motion to Exclude Same**

8.     ATG objects to the report and opinions of James B. Peloquin, upon which Schlichtmann's motion for summary judgement relies, and moves the Court to exclude those opinions, both because Peloquin does not meet the qualification requirements of FED.R.CIV.P. 702 and his opinions do not provide the factual or legal foundation required by FED.R.CIV.P. 702. Peloquin, a construction lawyer from Massachusetts, like Schlichtmann, is not licensed in the Commonwealth of Pennsylvania and in sharp contrast to the CV and report of Abraham Reich, neither Peloquin's CV nor his report reflect any special knowledge of the law of Pennsylvania (or any other jurisdiction) governing professional competence, standard of care or negligence. Setting aside Peloquin's obvious lack of appropriate credentials under Rule 702, in contrast to the report of Abraham Reich, Peloquin's report provides only self-serving and conclusory claims of acceptable

---

[3] Robert Lopardo sadly passed away during the pendency of this suit. Schlichtmann now claims that he kept Lopardo, a non-lawyer, fully informed but did so on the telephone and did not do so in writing. There are literally no writings, reports or even emails which reflect the reporting which Schlichtmann claims.

professional conduct by Schlichtmann and do not provide the facual or legal foundation for his opinions required by Rule 702.

**Schlichtmann claims that ATG has not sustained an Actual Loss**

9.      Schlichtmann's Motion for Summary Judgment claims that ATG has no actual damages, notwithstanding the fact that there is no dispute that ATG paid GSK $1.9 million to satisfy the contempt settlement agreement and $125,000 in attorneys' fees demanded by GSK as part of the contempt settlement agreement. The basis for Schlichtmann's claim of no actual damages is that "ATG, through its Indemnity Motion, obtained (at great expense) a judgment of $1.9 million against Greer deems its alleged damages in this action speculative and remote at best." As set out in paragraph 3 above, ATG and Greer/GRDL and Greer's insurance carrier reached a confidential, *but conditional*, settlement agreement with Greer/GRDL and CCIC, which, if fully consummated, would allow ATG to recover an amount slightly less than half of its judgment. Although the conditional settlement agreement is confidential by its terms, ATG will seek permission of Greer/GRDL and CCIC to submit the agreement under seal to the Court. The conditional settlement agreement arose from the "all parties" mediation in Chicago in January of 2018. It was conditioned upon Greer obtaining financing for his portion of the settlement. Although the date for Greer to obtain that financing has passed, Greer has not obtained the necessary financing. Th parties continue to attempt to consummate that settlement but no payment has been made. The key here is that ATG does not seek a "windfall" as Schlichtmann claims. Rather, ATG seeks to recover its indemnity judgment and its fees incurred in obtaining that judgment. ATG seeks only any shortfall in payments ultimately received from Greer/GRDL and CCIC, if any.

**ATG's Action Against Schlichtmann is not Inconsistent with ATG's Claims Against Greer**

10. Schlichtmann's Motion for Summary Judgment attempts to show that by bringing this action against Schlictmann, ATG has taken a position inconsistent with its position and claims in the indemnity action against Greer and therefore should be estopped from brining these legal malpractice claims. In fact, ATG's claims against Greer for the underlying Greer/GRDL tortious conduct are not at all inconsistent with the legal malpractice claims brought here against Schlichtmann. ATG's claims in this case against Schlichtmann in no way diminish the fact that Greer/GRDL were legally responsible for the GSK claims in the contempt proceeding. Rather, ATG's claims in this case are based upon:

  a. Schlichtmann's failure to fully and promptly inform ATG of the facts and circumstances surrounding Schlictmann's representation and particularly the decision to settle and the consequences of the settlement agreement;

  b. Schlichtmann's entire failure to provide ATG with the defense to which it was entitled in the contempt proceeding;

  c. Schlichtmann's failure to reasonably consult with ATG about the means by which its Objectives weare to be accomplished and Schlichtmann's active and aggressive encouragement that ATG enter into a settlement which no appropriately informed and advised client in ATG's position would have entered; and,

  d. Schlichtmann's failure to document even the disastrous settlement he wrongly advised ATG was its only realistic alternative.

*See* February 2, 2018 expert report of Abraham C. Reich attached as Exhibit A.

11. What Schlichtmann fails to recognize is that as ATG's counsel, Schlichtmann had the responsibility to inform ATG of all relevant facts, circumstances and potential consequences of the decisions made regarding the GSK contempt matter, including, *inter alia*:

- the fact that by signing the settlement agreement proposed by Schlichtmann, ATG was obligating itself to be jointly responsible for the misrepresentations of Greer/GRDL;

- the fact that because the Contempt Settlement agreement did not explicitly set out the Greer/GRDL indemnity obligation, ATG would likely have to spend hundreds of thousands of dollars to obtain a judgment to that effect;

- the high risk that Greer/GRDL did not and would not have the financial wherewithal to reimburse ATG for the $1.9 million obligation it undertook under the terms of the Contempt Settlement agreement, something which Greer told Schlichtmann but Schlichtmann did not convey to ATG until it was too late;

- the fact that Schlichtmann did not investigate and research CCIC's liability for the Greer/GRDL settlement obligation or ATG's legal ability to recover indemnity from CCIC.

12. The starting point for Schlichtmann's negligence and cavalier approach to the representation of ATG is the total failure to provide a retention agreement that set out the scope of the representation and any agreement with regard to fees. In fact, when asked what efforts he made "to be sure the client did understand what fees, if any, [he] intended to charge, Schlichtmann responded:

> I believe Bob Lopardo trusted me and I trusted him and we had a relationship [albeit, not an attorney-client relationship] going back over the years. . . . We did not have any specific discussions about it. It wasn't an issue that I raised or that he raised.

(Ex. D., Schlichtmann January 25, 2018 depo. at p. 28, ll. 3-25).

12. As set out in ATG's Motion for Summary Judgment Regarding Attorneys' Fee Claim, Jan Schlichtmann met none of the requirements to practice law in the Commonwealth of Pennsylvania and to represent ATG during the relevant time period in 2015 because he was not licensed to practice law in the Commonwealth of Pennsylvania nor was he so licensed in 2015, when he provided legal services to ATG. Moreover, Jan Schlichtmann did not seek *pro hac vice* admission to represent ATG in the GSK contempt proceeding at any point in time between the day the contempt hearing began and March 16, 2015, the day Jan Schlichtmann signed the contempt

settlement agreement and bound ATG to pay that settlement. These facts are again, illustrative of the cavalier approach to the representation of ATG taken by Schlichtmann.

For the reasons set out above, ATG moves this Court to deny Schlichtmann's Motion for Summary Judgment and for such other relief to which ATG may show itself entitled.

Dated:  April 6, 2018                                              Respectfully Submitted,

**BLANK ROME LLP**

*/s/ Robert Scott*
ROBERT SCOTT
717 Texas Avenue, Suite 1400
Houston, TX 77002
Tel: (713) 228-6607
Fax: (713) 228-6605
RScott@BlankRome.com

ANTHONY B. HALLER
ROSEMARY MCKENNA
Blank Rome LLP
One Logan Square
18th and Cherry Streets
Philadelphia, PA  19103
Tel: (215) 569-5500
Fax: (215) 832-5500
Haller@BlankRome.com
Palmer@BlankRome.com
McKenna@BlankRome.com

H. PATRICK MORRIS
DAVID F. FANNING
Johnson & Bell
33 West Monroe Street, Suite 2700
Chicago, IL 60603
Tel: (312) 984-0244
Fax: (312) 372-9818
morrisp@jbltd.com
fanningd@jbltd.com

ATTORNEYS FOR
PLAINTIFF/COUNTERCLAIM
DEFENDANT ATG TRUST COMPANY,
AN ILLINOIS CORPORATION

## CERTIFICATE OF SERVICE

I, Robert Scott, hereby certify that on April 6, 2018, I caused a true and correct copy of the foregoing Response and memorandum in Support of Response to Schlichtmann Defendants' Motion for Summary Judgment to be served upon the following counsel of record via ECF notification and electronic mail:

Kenneth B. Walton, Esquire
Lewis, Brisbois, Bisgaard & Smith LLP
One International Place, Suite 350
Boston, MA 02110

David B. Sherman
Lewis, Brisbois, Bisgaard & Smith LLP
550 E. Swedesford Road, Suite 270
Wayne, PA 1908

*Attorneys for Defendants/Counterclaim Plaintiffs*
*Jan R. Schlichtmann and Jan R. Schlichtmann, P.C.*

/s/ *Robert Scott*
Robert Scott