# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ATG TRUST COMPANY,** : | |
| Plaintiff, : | |
| v. : | **CIVIL ACTION NO. 17-0646** |
| : | |
| **JAN R. SCHLICHTMANN,** *et al.*, : | |
| Defendants. : | |

## MEMORANDUM OPINION

Rufe, J.                                                                              June 6, 2018

Plaintiff ATG Trust Company[1] brought this action against Defendants Jan R. Schlichtmann and Jan R. Schlichtmann, P.C. (collectively, "Schlichtmann") alleging legal malpractice and breach of contract claims in connection with Schlichtmann's representation of ATG during a contempt proceeding previously before this Court. Schlichtmann raised counterclaims against ATG, asserting breach of contract, breach of implied contract, and quantum meruit. The parties moved for summary judgment. For reasons set forth below, the Court will deny the motions.

## I.    BACKGROUND[2]

This matter arises out of the multi-plaintiff cases alleging product liability claims against GlaxoSmithKline ("GSK") in *Collier v. GlaxoSmithKline*[3] and *Ezell v. GlaxoSmithKline*,[4] which are part of the Avandia Multi-District Litigation ("MDL") before this Court. Greer represented the plaintiffs in the two cases, as well as many other Avandia claimants, some of whom had cases filed in state court and some of whom had unfiled claims.

---

[1] Previously known as Guaranty Trust Company.

[2] The facts are either agreed upon by the parties or are noted when in dispute.

[3] *See* Civil Action No. 11-480.

[4] *See* Civil Action No. 11-482.

In February 2012, all claims of Greer's clients were settled pursuant to a master settlement agreement ("MSA") with GSK. Three months later, on behalf of these settling claimants, Greer and GSK entered into a Stipulation to Establish a Qualified Settlement Fund and Appoint a Fund Administrator and Trustee ("QSF Stipulation"). This stipulation was approved by an order of this MDL Court. ATG was appointed the trustee of the Qualified Settlement Fund. During the administration of the MSA, however, a dispute arose between GSK and Greer regarding whether a portion of the money GSK had deposited into the Fund should be distributed to the settling claimants and Greer or reimbursed to GSK.

On August 22, 2012, Greer and GSK entered into a written amendment to the MSA, which specifically acknowledged the dispute and provided that if the parties could not come to a resolution by November 15, 2012, they would submit the dispute to arbitration. The parties agreed that the disputed funds ("holdback amount") would be held in the trust account and would not be distributed while the dispute was pending. Although the dispute was not resolved by November 15, 2012, neither party requested arbitration.

Notwithstanding the ongoing dispute, on July 26, 2013, Greer sent an email to Mark Wahlstrom of Wahlstrom & Associates, whom Greer had retained to assist in the administration of the MSA, explaining that the holdback amount should be disbursed to him, claiming that GSK had consented to the release of the holdback amount. As had been the parties' practice, Greer communicated with Wahlstrom, and Wahlstrom relayed the information to ATG. Relying on these representations, ATG authorized and disbursed the holdback amount to Greer.[5]

---

[5] ATG also relied upon Paragraph 18 of the QSF Stipulation, which reads: "The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail, or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in his reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by GSK or [Greer]."

In January 2015, GSK requested and received an accounting of the remaining balance in the Fund, and realized that a substantial amount of money had been distributed without its consent. On February 6, 2015, it filed an Emergency Motion, seeking an order to show cause as to why Greer and ATG should not be held in contempt of Court for the unauthorized withdrawal of funds in violation of the QSF Stipulation and Order. According to ATG, the contempt motion "sought an accounting from ATG and sought to hold ATG in contempt but unlike its claims against Greer for reimbursement or payment of money, GSK's motion, on its face, sought no reimbursement or payment of money from ATG."[6] ATG retained Schlichtmann for the limited purpose of resolving the contempt motion.[7]

On February 10, 2015, the Court convened an emergency hearing on the Motion. Schlichtmann appeared by telephone on behalf of ATG. Because the parties wished to conduct discovery before presenting additional evidence, the hearing was not completed at that time. Over the course of the next month, GSK, ATG, and Greer engaged in settlement negotiations to resolve the contempt motion. Schlichtmann represented ATG throughout the contempt proceeding and negotiated the settlement agreement on its behalf.

On March 9, 2015, before the contempt hearing resumed, the parties entered into a confidential settlement agreement and release to resolve the issues presented in GSK's contempt motion. The contempt settlement agreement provided that Greer and ATG were jointly and severally liable to GSK. It also stated that the "settlement amount is not punitive or penal in nature or the result of any sanction, but represents actual and compensatory damages owed to

---

[6] First Am. Compl. at ¶ 11.

[7] Schlichtmann had previously been retained as a consultant by the QSF to perform limited tasks as directed and on an as needed basis represented the QSF, not ATG, from March to September of 2012. Defs.' Mot. for Summ. J. at 2.

GSK for violations of agreements with GSK."[8] The contempt settlement agreement was approved by the Court by Order dated March 24, 2015.

ATG paid the full amount owed under the contempt settlement agreement, and sought indemnification from Greer, as Greer and his clients received the money that had been erroneously distributed, beginning a protracted effort to obtain indemnification from Greer. On June 17, 2016, after five days of evidentiary hearings and extensive motion practice, this Court entered its judgment finding that Greer was obligated to indemnify ATG for the payment it made to GSK. Greer and ATG later reached a settlement on indemnification.

ATG initiated the instant litigation against Schlichtmann alleging legal malpractice and breach of contract claims stemming from his limited representation of ATG in resolving the contempt motion. In response, Defendants raised counterclaims against ATG, including breach of contract, breach of implied contract, and quantum meruit. The parties have moved for summary judgment.

## II.  STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."[10] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[11] A dispute about a material fact is

---

[8] *Id.* at ¶ 33 (quoting Ex. 7).

[9] Fed. R. Civ. P. 56(a),(c)(1)(A).

[10] *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

[11] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[12]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[13] Further, a court may not weigh the evidence or make credibility determinations.[14] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[15] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[16] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[17] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[18] The rule is no different where there are cross-motions for summary judgment.[19]

## III. DISCUSSION

### A. SCHLICHTMANN'S MOTION FOR SUMMARY JUDGMENT

Schlichtmann moves for summary judgment on ATG's legal malpractice claims. The parties agree that Pennsylvania law applies to all claims. "Pennsylvania courts have held that

---

[12] *Id.*

[13] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[14] *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[16] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[17] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[18] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

[19] *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

legal malpractice actions sound both in tort and in contract," and a plaintiff may bring both claims at the same time.[20] Pursuant to Pennsylvania law, to establish a legal malpractice claim under a negligence theory, the plaintiff bears the burden of proving: "(1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge; and (3) that such failure was the proximate cause of the harm to the plaintiff."[21] In contrast, to establish a legal malpractice claim under a breach of contract theory, the plaintiff bears the burden of proving: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."[22]

### 1. LEGAL MALPRACTICE UNDER A NEGLIGENCE THEORY

Schlichtmann argues that ATG has not set forth evidence to satisfy the second element of a legal malpractice claim under a negligence theory. In particular, Schlichtmann contends ATG cannot identify evidence showing that he failed to "exercise ordinary skill and knowledge"[23] in his limited representation of ATG during the contempt proceeding because he was able to reach a settlement agreement with GSK and prevented ATG from being held in contempt or sustaining other adverse penalties.[24] However, there are disputed issues of material facts as to whether

---

[20] *ASTech Int'l, LLC v. Husick*, 676 F. Supp. 2d 389, 400 (E.D. Pa. 2009) (citing *Wachovia Bank, N.A. v. Ferretti*, 935 A.2d 565, 570 (Pa. Super. Ct. 2007), *Gorski v. Smith*, 812 A.2d 683, 693-94 (Pa. Super. Ct. 2002)).

[21] *Id.*(internal quotation marks and citations omitted).

[22] *Id.*(internal quotation marks and citations omitted).

[23] *Id.*

[24] Defs.' Reply in Supp. of Mot. for Summ. J. at 2. In its response to Defendants' motion for summary judgment, Plaintiff moves to exclude the declaration of defense expert James B. Peloquin because he is not licensed to practice law in Pennsylvania. However, this motion will be denied without prejudice, as Plaintiff has not shown that an expert in a legal malpractice action must be licensed to practice law in the state where the action is being litigated. Rather, the Pennsylvania Rule of Civil Procedure 1042.3, which requires a certificate of merit in malpractice cases, provides only that "an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in

Schlichtmann failed to exercise ordinary skill and knowledge during his limited representation of ATG by (1) failing to disclose asserted conflicts of interest, (2) failing to seek a continuance of the GSK contempt motion, (3) failing to file a response to GSK's contempt motion, (4) failing to appear at the contempt hearing in person, (5) failing to defend against the GSK contempt motion, (6) failing to adequately represent ATG's interests in the binding contempt settlement agreement, (7) failing to inform ATG of any issues with obtaining insurance coverage for the settlement agreement, and (8) misrepresenting factual issues to ATG.[25] According to ATG, as a result of these lapses, ATG "paid over $2 million to satisfy a settlement of GSK's contempt motion," which it would not have agreed to pay if Schlichtmann had fully informed ATG of all the facts, circumstances, and consequences of the contempt proceeding and this settlement agreement.[26]

In addition, Schlichtmann asserts ATG did not sustain an actual loss. A legal malpractice claim also requires "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm."[27] As with all elements of a

---

bringing about the harm, . . . ." Pa. R. Civ. P. 1042.3(a)(1). It does not specify where such an expert must be licensed. In addition, the commentary notes for this Rule state:

> It is not required that the 'appropriate licensed professional' who supplies the necessary statement in support of a certificate of merit required by subdivision (a)(1) be the same person who will actually testify at trial. It is required, however, that the 'appropriate licensed professional' who supplies such a statement be an expert with sufficient education, training, knowledge and experience to provide credible, competent testimony, or stated another way, the expert who supplies the statement must have qualifications such that the trial court would find them sufficient to allow that expert to testify at trial. . . . .

*Id.* Again, there is no mention of an in-state licensing requirement. Therefore, this contention cannot serve as the basis for excluding the expert report of James B. Peloquin.

[25] Pl.'s Resp. to Defs.' Mot. for Summ. J. at 5-6.

[26] *Id.* at 2.

[27] *ASTech Int'l, LLC*, 676 F. Supp. 2d at 400 (citing *Kituskie v. Corbman,* 714 A.2d 1027, 1030 (1998); *Duke & Co. v. Anderson*, 418 A.2d 613, 617 (1980)).

claim, the plaintiff bears the burden of proving actual loss.[28] ATG asserts that it sustained an actual loss when it was forced to pay nearly $2 million to GSK pursuant to the contempt settlement agreement, and sustained further losses when it was required to engage in litigation against Greer in an attempt to recoup these funds. Schlichtmann contends that this loss is speculative because ATG obtained a $1.9 million judgment against Greer to recoup these funds. However, ATG explains that, after sustaining litigation expenses to obtain the judgment against Greer, it entered into a settlement agreement with Greer that "would allow ATG to recover an amount slightly less than half of" the original $2 million it was required to pay to GSK.[29] The Court concludes that ATG has presented sufficient evidence to raise a genuine issue of material fact as to whether Schlichtmann's actions caused ATG to sustain the actual losses described above.[30]

Schlichtmann also contends that the doctrine of collateral estoppel bars ATG's legal malpractice claims. In particular, Schlichtmann states that "[a]s a general rule, a party to an action is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained."[31] Contrary to Schlichtmann's argument, however, ATG's position during the contempt proceeding and this case are not inconsistent. In the contempt proceeding, ATG took the position that Greer should be responsible for indemnification, and that ATG did not do anything wrong by disbursing the funds to Greer. Here, ATG continues to assert that Greer should be fully responsible for the

---

[28] *Id.*

[29] Pl.'s Resp. to Defs.' Mot. for Summ. J. at 8.

[30] *See ASTech Int'l, LLC*, 676 F. Supp. 2d at 404 (finding that the plaintiff identified sufficient evidence to present a genuine issue of material fact as to whether the defendant's alleged legal malpractice caused the plaintiffs the actual loss of hiring additional counsel and incurring additional legal fees).

[31] Defs.' Mot. for Summ. J. at 17 (citing *Associated Hospital Serv. of Philadelphia v. Pustilnik*, 497 Pa. 221 (1981)).

payment of the disbursed funds, but also explains that Schlichtmann failed to protect its interests in the contempt proceeding by entering into a settlement agreement under which it was jointly and severally liable with Greer for the wrongfully disbursed funds. This position is not inconsistent with the position taken in the contempt proceeding; thus, Schlichtmann's collateral estoppel argument is without merit. For these reasons, summary judgment will be denied with respect to ATG's legal malpractice claim based on a negligence theory.

### 2. LEGAL MALPRACTICE UNDER A BREACH OF CONTRACT THEORY

Schlichtmann contends that ATG cannot establish the second and third elements of a legal malpractice claim based on a breach of contract theory, that is, "a breach of a duty imposed by the contract; and . . . resultant damages."[32] However, as explained above, ATG has identified evidence in the record creating genuine disputes of material fact as to whether Schlichtmann failed to exercise ordinary skill and knowledge during his limited representation of ATG, and that it sustained actual losses, or damages, as a direct result of Schlichtmann's representation. Schlichtmann's contentions otherwise are without merit, and summary judgment will be denied with respect to this claim.

### B. ATG'S MOTION FOR SUMMARY JUDGMENT

ATG moves for summary judgment on Schlichtmann's counterclaims for breach of implied contract and quantum meruit raised in an effort to recover fees for legal services provided to ATG during the contempt proceeding.[33]

---

[32] *ASTech Int'l, LLC*, 676 F. Supp. 2d at 400.

[33] Plaintiff did not move for summary judgment with respect to Defendant's breach of contract claim, which deals with a tolling agreement allegedly executed by Plaintiff and Defendants. *See* Am. Counterclaim at ¶¶ 33-36.

1. **BREACH OF IMPLIED CONTRACT**

"A breach of contract claim under Pennsylvania law requires a plaintiff to establish: '(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract[,] and (3) resultant damages.'"[34] "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written."[35]

In this case, it is undisputed that ATG retained Schlichtmann around the time of the contempt hearing in February of 2015. Thereafter, Schlichtmann was instructed to seek a settlement of the contempt motion on behalf of ATG. Schlichtmann did so by reaching a resolution on the contempt motion and advising ATG to enter into the contempt settlement agreement. This limited representation ended around June of 2015, shortly after the parties entered into the contempt settlement agreement. Based on Schlichtmann's actions taken on behalf of ATG, it can be inferred that an implied contract for legal services and representation was entered into by ATG and Schlichtmann.

ATG contends that summary judgment must be granted in its favor on the breach of implied contract claim because there was "no agreement with ATG, written or oral, regarding [Schlichtmann's] retention or fee arrangement."[36] However, a written or oral agreement is not required for a breach of implied contract claim, all that is required is a showing through the parties' conduct that an attorney-client representation had formed with the expectation that the

---

[34] *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016) (quoting *Omicron Sys., Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. Ct. 2004)).

[35] *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015) (citing *Highland Sewer & Water Auth. v. Forest Hills Mun. Auth.*, 797 A.2d 385, 390 (Pa. Commw. Ct. 2002)).

[36] Pl.'s Mot. for Summ. J. at 3.

attorney would be compensated for those services rendered. In addition, ATG contends that this claim must be dismissed because Schlichtmann:

> never kept any records of time he claims to have expended, had no agreed-upon hourly rate, . . . has never prepared or sent a bill for his services to ATG and has no description, memo or recitation of the tasks or services he allegedly provided which would allow him to prepare a bill.[37]

Schlichtmann, however, identifies material facts that are in dispute that a factfinder must decide on these very issues, which preclude granting summary judgment on this claim.

ATG also argues that Schlichtmann failed to follow the Pennsylvania Rules of Professional Conduct with respect to preparing a fee agreement and filing a *pro hac vice* motion for admission to practice in Pennsylvania, precluding these claims.[38] Pennsylvania courts have held, however, that failure to follow the Rules of Professional Conduct do not have the effect of substantive law, and cannot be relied upon to dismiss a breach of implied contract claim.[39] Rather, Schlichtmann's alleged failure to follow the Pennsylvania Rules of Professional Conduct does not obviate the remaining disputed material facts as to whether an implied contract for legal fees existed and was breached. Summary judgment will be denied with respect to Schlichtmann's breach of implied contract claim.

### 2. QUANTUM MERUIT

A claim for legal fees in quantum meruit "is fundamentally an equitable claim of unjust enrichment."[40] To establish an unjust enrichment claim under Pennsylvania law, a plaintiff must

---

[37] *Id.* at 3-4.

[38] It should be noted that this Court did not require attorneys to file *pro hac vice* motions for admission in the Avandia MDL. *See* Case Management Order No. 1 (MDL Doc. No. 45).

[39] *In re Estate of Pedrick*, 482 A.2d 215, 217 (Pa. 1984).

[40] *Meyer, Darraugh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 179 A.3d 1093, 1102 (Pa. 2018).

show that "(1) he conferred a benefit on the defendant, (2) the defendant knew of the benefit and accepted or retained it, and (3) it would be inequitable to allow the defendant to keep the benefit without paying for it."[41] "Whether the doctrine of *quantum meruit* applies to allow recovery is a factual question in which the focus is not on what the parties intended, but rather on whether a party has been unjustly enriched."[42]

Here, Schlichtmann has put forth evidence that ATG retained the benefit of his services during the contempt motion proceeding extending from February through June of 2015. Moreover, ATG knew of the contempt settlement agreement and accepted Schlichtmann's legal services by entering into the agreement Schlichtmann had negotiated on its behalf. Without the representation, ATG may not have been able to resolve the contempt proceeding expeditiously and may have faced more stringent penalties in the contempt hearing.

ATG contends that Schlichtmann's quantum meruit claim should be dismissed because there was no enforceable fee agreement between Schlichtmann and ATG and because Schlichtmann did not follow the Pennsylvania Rules of Professional Conduct in communicating his alleged fees to ATG. However, as explained above, these are genuine disputes of material fact as to whether Schlichtmann should be entitled to recover under a quantum meruit theory. Summary judgment will be denied with respect to this claim.

**IV.   CONCLUSION**

For the reasons set forth above, the motions for summary judgment will be denied. An Order follows.

---

[41] *Whitaker*, 198 F. Supp. 3d at 492 (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999)).

[42] *Meyer, Darraugh, Buckler, Bebenek & Eck, P.L.L.C.*, 179 A.3d at 1103.